WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Harrison S., | No. CV-25-00050-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Claimant Harrison S. ("Claimant")[1] seeks review of the Social Security Administration Commissioner's ("SSA" or "Commissioner") final decision denying his disability insurance benefits. For the reasons set forth below, the Administrative Law Judge's ("ALJ") decision is **vacated and remanded** for further administrative proceedings.

## I.     BACKGROUND

### A.     Factual Overview

Claimant was 21 years old on his alleged disability onset date of January 1, 2018. (Administrative Record ("AR") 15, 41.) He has a college education and has no past relevant work. (AR 288–89.) Claimant filed an application for supplemental security income on October 28, 2020. (AR 15.) The claim was initially denied on September 13, 2021, and upon reconsideration on June 28, 2022. (*Id.*) Claimant appeared via video at a hearing on March 20, 2023. (*Id.*) Following the hearing, a post hearing consultative

---

[1]     As a matter of practice, Claimant is referred to as such and, at most, by his first name and last initial to protect his privacy.

examination was ordered. (*Id.*) Upon request of Claimant's counsel, a supplemental hearing was held via video on September 8, 2023. (*Id.*) Counsel's request for the consultative evaluator to be called to testify at the supplemental hearing was denied. (*Id.*) The ALJ denied Claimant's claim on December 18, 2023. (AR 43.) The Appeals Council denied Claimant's request for review on November 12, 2024. (AR 1.) Claimant then appealed to this Court. (Doc. 1.)

### B.    The SSA's Five-Step Evaluation Process

To qualify for Social Security Disability Insurance benefits, a claimant must show that he "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to "any medically determinable physical or mental impairment." *Id*. § 423(d)(1). The impairment must be of such severity that the claimant cannot do his previous work or any other substantial gainful work within the national economy. *Id*. § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id*. § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities"; and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* §§ 404.1520(a)(4)(iii), (e). The claimant's RFC is his ability perform physical and mental work activities "despite [his] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[his] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), (e). "Past relevant work" is work the claimant has "done within the past five years that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform his past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering his RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

**C.    The ALJ's Application of the Factors**

Here, at Step One, the ALJ concluded that Claimant had not engaged in substantial gainful activity since the application date of October 28, 2020. (AR 18.)

At Step Two, the ALJ determined that Claimant had severe impairments, including anxiety, depression, autism spectrum disorder, seizures, Arnold-Chiari malformation, and tremors. (*Id.*.)

At Step Three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. § 404. (AR 19.)  With respect to the mental impairment, the ALJ analyzed the four "paragraph B" criteria and found that Claimant had mild limitations in (1) understanding, remembering or applying information, and moderate limitations in (2) interacting with others, (3) concentrating, persisting or maintaining pace and (4) adapting or managing oneself. (AR 19–22.)  The ALJ also found that the medical evidence did not establish that Claimant had a documented history of the existence of the disorders over a period of at least 2 years, with evidence of both: (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that was ongoing and that diminished the symptoms and signs of the mental disorders; and (2) marginal adjustment or minimal capacity to adapt to changes in the environment or to demands that were not already part of the claimant's daily life, thus the record failed to satisfy the "paragraph c" criteria. (AR 23.)

The ALJ then found that Claimant had the following RFC:

> [Claimant can] perform a full range of work at all exertional levels but with the following nonexertional limitations: no climbing ladders, ropes, or scaffolds; occasional climbing ramps or stairs; occasional balancing as defined by the *Selected Characteristics of Occupations* (SCO); frequent bilateral handling and fingering; occasional concentrated exposure to non-weather related extreme cold, non-weather related extreme heat, non-weather related wetness, and non-weather related humidity; occasional exposure to excessive loud noise; occasional exposure to excessive vibration; occasional concentrated exposure to pulmonary irritants and poorly ventilated areas; no exposure to dangerous moving machinery; no exposure to unprotected heights; no occupational driving; he can perform work involving understanding, remembering, and carrying out simple instructions; work with occasional changes in a routine work setting; work with minimal, which is defined as 15 percent of an eight-hour workday, in-person interaction with the public; work with occasional interaction with coworkers, but no working in tandem with others; and work with no specific production rate work, such as that found on an assembly line.

(*Id.*)

- 4 -

At Step Four, the ALJ found that Claimant has no past relevant work.  (AR 41.)  At Step Five, based on the RFC formulation and the testimony of the vocational expert ("VE"), the ALJ found that there are jobs that exist in significant numbers in the national economy that claimant can perform considering his age, education, work experience, and such as "Package Sorter," "Merchandise Marker," "Router", and "Collator Operator."  (AR 41–42.)  Accordingly, the ALJ concluded that Claimant was not disabled as defined in the Social Security Act from the alleged onset date through December 18, 2023.  (AR 43.)

## II.    LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ's decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)).  Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)).  Courts must consider the record in its entirety, "weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion."  *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).  Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [courts] must defer to the ALJ's conclusion.").  Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely."  *Garrison*, 759 F.3d at

1010.  Finally, only those issues raised by the party challenging the decision are reviewed. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III.    DISCUSSION

Claimant argues that the ALJ committed materially harmful error by rejecting the assessments from Claimant's psychiatric nurse practitioner, Andrea Brunson, Nurse Practitioner ("NP"), and agency examining psychologist, Dr. Charles Jay House, Ph.D., without providing sufficient explanation.  (Doc. 16 at 1.)  Specifically, he challenges the ALJ's findings that Dr. House's opinion was "partially persuasive," (AR 37, 38) and NP Brunson's opinion was "not persuasive."  (AR 40, 41.)

An ALJ must evaluate every medical source based on several factors, the "most important" of which are "supportability" and "consistency."  *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (citations omitted).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant . . . objective medical evidence," and consistency "means the extent to which a medical opinion is consistent . . . with the evidence from other medical sources and nonmedical sources in the claim."  *Id.* at 791–92 (alterations in original) (quotation marks omitted).  An ALJ "must articulate . . . how persuasive [he or she] finds all of the medical opinions from each doctor or other source and explain how [he or she] considered the supportability and consistency factors in reaching these findings."  *Id.* at 792 (citation modified).  Under the current regulations, "the decision to discredit any medical opinion[] must simply be supported by substantial evidence."  *Id.* at 787.

### A.    Dr. House's Opinion

Dr. House evaluated Claimant on May 23, 2023, at the request of the ALJ.  (AR 777–88.)  Dr. House identified a number of limitations that the ALJ adopted in the RCC, and are thus not at issue in this case.  The ALJ found Dr. House's opinion regarding several other opinions, however, unpersuasive, resulting in an overall finding that the opinion was partially persuasive.

As relevant to this appeal, the ALJ declined to adopt Dr. House's finding that

Claimant had "other capabilities affected by [his] impairment," which he described as follows:

> This individual was very talkative, impulsive, and somewhat impatient during this interview. I suspect that he would have some difficulty maintaining concentration on a job. This would be particularly true if there were many distractions or if the environment was loud. He will likely display problems with judgment on the job. He would not work well as a member of a team, but would need ongoing supervision to make sure that he understands and is performing tasks correctly.

(AR 787.) The ALJ rejected these findings as "vague and not supported by the evidence of record," explaining that several pieces of evidence in the record were inconsistent with the ALJ's finding, including that (1) Claimant "reported he was able to attend in-person community college classes with accommodations, such as extra time to complete assignments and tests, as well as being able to step out of classes for a few minutes if he became stressed (Testimony)" which showed that "[d]espite the need for accommodations, the claimant's ability to attend college-level courses reflects the ability to concentrate that is inconsistent with the opinion of Dr. House"; (2) that Claimant's "mental health treatment records do not reflect evidence or findings to support the opinions of impulsiveness, impatience, or the need for ongoing supervision opined by Dr. House" because although the records "reflect positive findings of disturbances in mood, including anxious or indifferent mood, and intermittent findings of pressured or slow speech, other mental status findings remained unremarkable (Exs. 1F, 8F, 10F, 13F, 15F, 21F)"; and (3) although Claimant "initially presented as anxious with a depressed and tearful mood in August 2019 (Ex. 1F, p. 43)," his records from "October 2020 through June 2023 indicate the claimant reported he was doing ok with no mood swings, and no complaints of anger, irritability or agitation (Exs. 8F, pp. 2-37; 10F, pp. 31-93;15F; 21F)." (AR 37–38.)

### 1. Supportability

Claimant argues that the ALJ erred by failing to analyze Dr. House's rejected findings under the supportability factor altogether. (Doc. 16 at 15–16 (conducting his own supportability analysis based on Dr. House's evaluation and contrasting it with the absence

of a similar analysis by the ALJ); Doc. 18 at 4–5.)  The Commissioner does not meaningfully argue that the ALJ analyzed the supportability factor.  Rather, he states in conclusory fashion that "[t]he ALJ considered the vagueness of Dr. House's explanation when considering the supportability of his opinion, as well as Dr. House's supporting examination findings (Tr. 36-38), thus addressing that factor contrary to Plaintiff's argument that the ALJ ignored it." (Doc. 17 at 11 (citation omitted).)

The ALJ did not address the supportability of Dr. House's rejected findings.  As the pertinent regulations make clear, an ALJ must evaluate the "objective medical evidence and supporting explanations *presented by a medical source . . . to support his or her medical opinion(s)*" when considering the supportability factor.   20 C.F.R. § 404.1520c(c)(1) (emphasis added).   In other words, the ALJ must evaluate the explanations provided by the medical source in support of their opinions.  Here, the ALJ's analysis of Dr. House's rejected findings focused exclusively on other evidence in the record—namely, Claimant's testimony and other medical records—and not Dr. House's explanations.  (*See* AR 37–38.)

While the Commissioner does not expressly argue that the ALJ conducted the requisite supportability analysis, he argues that the ALJ properly rejected the findings at issue as "vague" because Dr. House used the equivocal term "likely." (Doc. 17 at 10–11.)  But the ALJ provided no explanation for her vagueness finding, (*see* AR 37–38), and the Commissioner's post-hoc explanation may not be considered.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (ALJ's decision must be reviewed "based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking").  Furthermore, even considering the Commissioner's argument, it fails because Dr. House stated, without equivocation, that Claimant would have difficulty working with others on a team but would still require supervision to ensure he understood and completed tasks correctly.  (AR 787.)

### 2.  Consistency

In addition to challenging the ALJ's failure to conduct a supportability analysis,

Claimant challenges the ALJ's consistency analysis.  He first challenges the ALJ's statement that his attendance at community college, with accommodations, was inconsistent with Dr. House's rejected findings, claiming that the ALJ failed to explain the inconsistency.  (Doc. 16 at 16–17.)  But the ALJ did provide an explanation: "Despite the need for accommodations, the claimant's ability to attend college-level courses reflects the ability to concentrate that is inconsistent with the opinion of Dr. House."  (AR 38.)  Claimant's first argument fails because it is based on a faulty premise.

Similarly, Claimant argues that the ALJ failed to explain why certain medical records reflecting normal findings was inconsistent with Dr. House's rejected findings and further argues that the treatment records are consistent with the rejected findings.  (AR 17–20.)  But the ALJ specifically identified medical records showing unremarkable mental status findings inconsistent with Dr. House's conclusion that Claimant was impulsive, impatient, needed supervision, and could not work in a team.  (AR 38 (citing AR 415–76 (mental status examinations showing largely intact concentration, cooperative behavior, logical thought, and intact insight and judgment, among other things); AR 507–42 (same); AR 576–632 (same); AR 657–749 (same); AR 754–65 (same); AR 792–95 (same)).)

And to the extent Claimant believes that the medical records point to a different conclusion than the one the ALJ reached, his argument must be rejected because it is an ALJ's responsibility—not a district court's—to resolve conflicts in the medical record. *Andrews*, 53 F.3d at 1039; *Torres v. Astrue*, 2012 WL 1032897, at *6 (C.D. Cal. 2012) (deferring to the ALJ's decision where references in the record supported both impairment and non-impairment, because "[i]t is the ALJ's province to resolve conflicts in the medical record"); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (holding that if "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld").  Here, substantial evidence supported the ALJ's consistency analysis and Claimant's argument fails.

**B.    NP Brunson's Opinion**

NP Brunson prepared two similar two-page medical assessments of Claimant's

ability to perform work-related activities, both of which simply involved the checking of boxes and the circling of words, and included no explanations.  (AR 502–03 (May 18, 2021 assessment); AR 766–67 (January 16, 2023 assessment).)  NP Brunson found that Claimant suffered from numerous impairments, which the ALJ described in detail and disregarded as "not persuasive."  (AR 40–41.)

In his Opening Brief, Claimant argues that the ALJ failed to adequately analyze NP Brunson's opinions for supportability and consistency.  (Doc. 16 at 20–24.)  The Court addresses each factor in turn.

### 1.  Supportability

Notwithstanding the check-box nature of the assessment forms used by NP Brunson, which include no more than eight handwritten words, none of which constitute explanation of her findings, Claimant argues that NP Brunson "explained that the assessed limitations resulted 'from objective, clinical, or diagnostic findings'" documented by her or other medical providers because she checked or circled a box saying as much.  (*Id.* at 21 (citing AR 503, 767).)  In other words, NP Brunson's "explanation" for her opinions was, at most, that they were based on unspecified medical records either she or other medical sources prepared.

The ALJ rejected NP Brunson's approach, finding that "a supportable explanation was not provided because there were insufficient references to medically acceptable objective clinical or diagnostic findings."  (AR 40.)  Claimant argues in a lengthy footnote—comprised of more than a full page of single-spaced text citing various cases from this district and one unpublished Ninth Circuit decision—that an ALJ may not reject a medical source opinion because it is a check box form that lacks supporting explanation.  (Doc. 16 at 21–22 n.9.)  At the end of the lengthy footnote, Claimant's counsel notes that I recently reached a different conclusion:

> *But see Manuel L[.], Jr. v. Comm. of Soc. Sec. Admin*, [2025 WL 871026] (D. Ariz. March 20, 2025) (finding the ALJ adequately addressed the supportability factor by simply noting the opinion was unsupported because it was provided on a check-box form with no explanation or citation to

specific records on the form itself).

(Doc. 16 at 22 n. 9.)

Claimant fails to meaningfully engage with, let alone acknowledge, the published Ninth Circuit decision cited in *Manuel L.* finding that an ALJ may reject a check-box report that lacks supporting explanation. In *Kitchen v. Kijakazi*, the Ninth Circuit stated: "[W]e have accepted the discounting of a medical opinion set forth in a checkbox form with little to no explanation." 82 F.4th 732, 740–41 (9th Circ. 2023) (citing *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Circ. 2020) (explaining that an ALJ "may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions")). Because Claimant ignores both *Kitchen* and my analysis of this issue in *Manuel L.*, I reject his oblique suggestion that I incorrectly decided *Manuel L.*.[2]

The ALJ adequately analyzed the supportability of NP Brunson's opinions by noting that NP Brunson provided no explanation for her conclusions. *See Kitchen*, 82 F.4th 740–41; *see also Woods*, 32 F.4th at 791–92 (confirming that "[s]upportability means the extent to which the medical source supports the medical opinion *by explaining* the 'relevant . . . objective medical evidence.'" (emphasis added) (citing 20 C.F.R. § 404.1520c(c)(1))). She therefore did not err.

### 2.     Consistency

Claimant next argues that that ALJ failed to adequately analyze the consistency factor in disregarding NP Brunson's opinions. (Doc. 16 at 22–24.) In rejecting NP's Brunson's opinions, the ALJ first explained that the "objective findings and other evidence in the case record are inconsistent with and do not support the severity of limitations assessed by Ms. Brunson" because, although those records "reflect positive findings of

---

[2]     I commend Claimant's counsel for citing *Manuel L.* in the footnote. Nonetheless, if counsel argues this issue in the future they must—consistent with their ethical obligations—"cite to the district court all binding authorities, not only the favorable ones." *Elder v. Holloway*, 984 F.2d 991, 998 (9th Circ. 1993) (mem.) (Kozinski, J., dissenting) (citing Model Rules of Professional Conduct, Rule 3.3(a)(2)). Put another way, they must cite *Kitchen* for the benefit of the district court and substantively argue why that case is distinguishable.

disturbances in mood and intermittent findings of pressured or slow speech . . . other mental status findings remained unremarkable, including findings related to the claimant's memory, thought process, thought content, insight and judgment." (AR 40 (citing pertinent records).) Moreover, she explained that NP Brunson's treatment records "reflect evidence of improvement in the claimant's mental condition" because although he initially presented as "anxious and tearful with a depressed mood in August 2019" and there were "limited findings of disturbances in mood and affect [that] continued from August 2019 to October 2020," later records "from October 2020 through June 2023 report the claimant was doing ok, his mood was ok with no mood swings, he had no complaints of anger, irritability, or agitation, his energy level and motivation were fair to good, and he reported doing chores at home." (AR 40–41 (citing pertinent records).)

Claimant first argues that the ALJ failed to "explain how the normal findings did not support any of NP Brunson's specific assessed limitations" and cite *Jones v. O'Malley*, 2024 WL 3963835 (9th Cir. 2024), in support of their argument. (Doc. 16 at 22.) With respect to most of NP Brunson's findings, Claimant's argument elevates form over substance and ignores the ALJ's extensive description of normal findings that necessarily conflict most of those findings. For example, the record evidence establishing normal memory, thought process and thought content necessarily conflicts with NP Brunson's findings that Claimant had a moderately severe limitation in his ability to "[u]nderstand, carry out, and remember instructions." (AR 502, 766). This is self-explanatory.

The same is true of the ALJ's reliance on records showing normal insight and judgment, improved mood, and no complaints of anger, irritability, or agitation, which are necessarily inconsistent with NP Brunson's findings of severe limitations in Claimant's ability to "[r]espond appropriately to supervision," "[r]espond appropriately to co-workers," and "respond to customary work pressures." (*Id.*) And the ALJ's reliance on records showing that Claimant's energy levels and motivation were fair to good, he was doing good, and he reported doing chores necessarily conflict with NP Brunson's findings that Claimant had a moderately severe limitation in the "degree of constriction of interest"

and severe limitations in "restriction of daily activities." (*Id.*)

There are, however, two findings that NP Brunson made that are not addressed by the records reflecting normal mental status and improvements following treatment: the findings that Claimant had severe limitations in his "ability to relate to other people" and in the "deterioration in personal habits." (*Id.*) None of the ALJ's descriptions of the record evidence bear on either of these limitations, and it is unclear why she rejected them. Accordingly, although most of her consistency analysis is supported by substantial evidence, her rejection of these two limitations is not.

### C.    Remand for Harmful Error

Having found that the ALJ erred in evaluating both Dr. House's and NP Brunson's opinions, the remedy must be fashioned. Not every error requires vacating an ALJ's decision. If an "error was harmless, meaning it was inconsequential to the ultimate nondisability determination," a court may affirm. *Ford*, 950 F.3d at 1154 (quotation marks omitted); *see also Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) ("The Court may not reverse an ALJ's decision on account of a harmless error.").

Citing *Woods*, the Commissioner argues that even if the ALJ failed to sufficiently analyze either Dr. House's or NP Brunson's opinions for supportability or consistency, such error was harmless. (Doc. 17 at 12.) *Woods*, however, does not help the Commissioner because the Ninth Circuit did not find that the ALJ erred with respect to its consistency analysis, did not evaluate the ALJ's supportability analysis (possibly because it may not have been challenged on appeal), and thus had no occasion to conduct a harmless error analysis. 32 F.4th at 782–85. Put another way, *Woods* has no bearing on the harmless error analysis in this circumstance, and the Commissioner's argument is rejected.[3]

---

[3]    The Commissioner also cites another decision from this district suggesting that an error with respect to either the consistency or supportability analysis may be deemed harmless if the ALJ's decision is nonetheless supported by substantial evidence. (Doc. 17 (citing *Stringer v. Comm'r Soc. Sec. Admin.*, 2024 WL 1340717, at *3 (D. Ariz. 2024).) *Stringer* is distinguishable because, like *Woods*, the court found that the ALJ committed no error. The *Stringer* court's harmless error analysis was thus dicta and is ultimately unpersuasive because it would require ignoring the clear holding in *Woods* that ALJs must evaluate medical testimony for both supportability and consistency. *See Woods*, 32 F4th at 792.

Claimant, on the other hand, argues for application of the "credit-as-true rule," (Doc. 16 at 24–25; Doc. 19 at 11), which would result in the immediate award of benefits, as opposed to remand for further proceedings. *Garrison*, 759 F.3d at 1019. The credit-as-true rule only applies if (1) the ALJ "failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion," *Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023) (citations omitted); (2) the "record has been fully developed," such that there are no "outstanding issues that must be resolved before a determination of disability can be made" and "further proceedings would not be useful," *id.* (citations omitted); and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," *Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017) (citation omitted). The Ninth Circuit has described this result as appropriate "only in rare circumstances." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quotation marks omitted). "The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court." *Revels*, 874 F.3d at 668 (citation modified).

In in its discretion, the Court will remand for further proceedings and not apply the credit-as-true rule. Here, the ALJ's error lies in her failure to evaluate the supportability factor when evaluating a specific set of limitations in Dr. House's opinion, and in failing to evaluate the consistency factor with respect to two limitations identified by NP Brunson. The ALJ might, after properly evaluating Dr. House's and NP Brunson's findings, decide again on remand that the rejected findings are not persuasive and that Claimant is not disabled. Accordingly, the Court cannot find that further proceedings would "serve no useful purpose." *See Brown-Hunter*, 806 F.3d at 495 (citation omitted); *id.* (rejecting the claimant's request for awarding benefits based on SSA's legal error).

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **vacated and remanded** for further administrative proceedings.

///

- 14 -

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and close this case.

Dated this 31st day of March, 2026.

_____
Honorable Sharad H. Desai
United States District Judge

- 15 -